**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| RYAN R. JOHNSON, | ) | NO. ED CV 18-1572-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| NANCY A. BERRYHILL, Deputy | ) | |
| Commissioner for Operations, | ) | |
| Performing duties and functions not | ) | |
| reserved to the Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____)

**PROCEEDINGS**

Plaintiff filed a complaint on July 25, 2018, seeking review of the Commissioner's denial of benefits. The parties consented to proceed before a United States Magistrate Judge on August 27, 2018. Plaintiff filed a motion for summary judgment on December 5, 2018. Defendant filed a motion for summary judgment on January 4, 2019. The Court has taken the motions under submission without oral argument. See L.R. 7-15; "Order," filed July 30, 2018.

**BACKGROUND**

Plaintiff was born on August 18, 1989 (Administrative Record ("A.R.") 33). Plaintiff asserts disability since October 25, 1997, based on, <u>inter alia</u>, allegations of autism, mental processing problems (_i.e._, poor short term memory, poor processing speed, needing continuous supervision), visual processing problems (_i.e._, turned in eye with no "binocularity" and limited peripheral vision), and difficulty with fine motor coordination (A.R. 24, 33, 257-64, 291, 308, 315, 323, 367). An Administrative Law Judge ("ALJ") reviewed the record and heard testimony from Plaintiff, a medical expert and a vocational expert (A.R. 15-25, 32-53). At the time of the August 24, 2017 administrative hearing, Plaintiff reportedly had been working 24 hours a week at Wal-mart with the assistance of a job coach arranged through the California Department of Rehabilitation (A.R. 31, 34-35).

In an October 3, 2017 decision, the ALJ found that Plaintiff has "severe" autism spectrum disorder (A.R. 17). However, the ALJ also found that Plaintiff retains the residual functional capacity for work at all exertional levels, limited to simple repetitive tasks that are object oriented, involve no interaction with the general public and only occasional interaction with coworkers and supervisors. See A.R. 19-24 (giving "great weight" to medical expert's testimony at A.R. 39-40, 42, and to state agency physicians' similar findings at A.R. 66-69, 92-96). The ALJ determined that Plaintiff is capable of performing work as an industrial cleaner, hospital cleaner and room cleaner, and, on that basis, denied disability benefits (A.R. 24-25 (adopting vocational expert testimony at A.R. 51)).

On June 13, 2018, the Appeals Council denied review (A.R. 1-5). Plaintiff had submitted to the Appeals Council his exit interview and termination records from Wal-mart dated October 1, 2017, which the Appeals Council declined to "consider and exhibit" (A.R. 2). The Appeals Council stated that the evidence did not show a reasonable possibility of changing the outcome of the decision (A.R. 2). Accordingly, Plaintiff's October 1, 2017 Wal-mart records are not a part of the Administrative Record.

## STANDARD OF REVIEW

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used correct legal standards. See Carmickle v. Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted); see also Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006).

If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. But the Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole,

3

weighing both evidence that supports and evidence that detracts from the [administrative] conclusion.

_Tackett v. Apfel_, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and quotations omitted).

**DISCUSSION**

After consideration of the record as a whole, Defendant's motion is granted and Plaintiff's motion is denied. The Administration's findings are supported by substantial evidence and are free from material[1] legal error. Plaintiff's contrary arguments are unavailing.

**I.** **Substantial Evidence Supports the Conclusion that Plaintiff Could Work through the Date of the ALJ's Decision.**

Substantial evidence supports the administrative conclusion that Plaintiff can work. Significantly, no physician has opined Plaintiff was totally disabled at any time during the alleged disability period. _See_ _Matthews v. Shalala_, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Administration's decision, the Court emphasized: "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled" or "implied that [claimant] was precluded from _all_ work activity") (emphasis original); _accord_ _Curry v. Sullivan_, 925

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. _See_ _Garcia v. Commissioner_, 768 F.3d 925, 932-33 (9th Cir. 2014); _McLeod v. Astrue_, 640 F.3d 881, 886-88 (9th Cir. 2011).

4

F.2d 1127, 1130 n.1 (9th Cir. 1990).  To the contrary, as summarized below, the state agency physicians, the consultative examiner, and the medical expert all opined that Plaintiff retains a residual function capacity consistent with the residual functional capacity the ALJ found to exist.

**A.   Summary of the Medical Opinion Evidence of Record**

State agency physicians reviewed the available record in February and April of 2015, and opined that Plaintiff was not disabled.  See A.R. 59-71, 87-98 (finding limitations consistent with the ALJ's residual functional capacity determination, i.e., Plaintiff would be capable of: (1) understanding and remembering simple instructions and procedures as well as work locations; (2) maintaining concentration, pace and persistence for simple routines throughout a normal work day/week; (3) accepting routine supervision and interacting with co-workers in a non-collaborative and superficial basis, and would "benefit" from non-public work given his autism; and (4) adapting to a routine and predictable work environment, recognizing typical hazards, traveling to routine locations, and setting goals independently, within the foregoing framework).

Treating psychologist Dr. Aubrey Fine provided a detailed "Evaluation Form for Mental Disorders" dated May 1, 2015 (A.R. 447-59).  Dr. Fine had treated Plaintiff since October of 2002, when Plaintiff was in seventh grade and had been referred to Dr. Fink after a diagnosis of "ADHD" (Attention Deficit Hyperactivity Disorder) with significant social difficulties and fine and gross motor difficulties

reportedly consistent with "high-functioning autism" or Asperger's syndrome (a category of autism spectrum disorder) (A.R. 448-52, 455).[2] Dr. Fine described Plaintiff as "quite a friendly individual," with: (1) some reported social difficulties with others especially in new situations; (2) reported full scale intelligence in the "low average" range; (3) identified weaknesses in visual motor, visual perception, and auditory and visual memory skills; and (4) a diagnosed attention disorder (A.R. 453).

Dr. Fine opined that Plaintiff's social functioning would likely impact Plaintiff's ability to interview, obtain and sustain a job (A.R. 454). Dr. Fine also opined that Plaintiff's autism spectrum disorder "would to some degree impact his ability to work and to sustain a position" (A.R. 457-58). However, Dr. Fine also opined that Plaintiff "has the ability to work under certain circumstances when

---

[2]     In a letter dated November 11, 2014, Dr. Fine stated that she had provided outpatient therapy for Plaintiff every other week for several years due to Plaintiff's diagnoses of autistic spectrum disorder and learning disability (A.R. 440; see also A.R. 473-96, 562-69 (Dr. Fine's available treatment notes from November of 2014 through January of 2017); A.R. 704 (undated summary of treatment from February of 2017 through July of 2017)). In a "Mental Disorder Questionnaire Form" dated December 30, 2014, Dr. Fine stated that Plaintiff also had an adjustment disorder (A.R. 441-45). Dr. Fine described social functioning as Plaintiff's "greatest diff[iculty]" in that Plaintiff reportedly has "tremendous diff[iculty]" relating with others his age, with a "very limited" social network and social skill deficits "in direct relationship to his disorder" (A.R. 444). Dr. Fine opined that Plaintiff has challenges in his sustained attention, finishing "many of his academic responsibilities [with] the support of tutors [and] his family" (A.R. 444). Dr. Fine also opined that Plaintiff's developmental delays will present challenges over Plaintiff's lifetime (A.R. 445).

appropriate accommodations are given in the work place," which may include: (1) a detailed orientation of job duties and expectations; (2) clear, precise instructions including expected time frames to complete duties; (3) feedback from Plaintiff to verify he understands instructions and what is expected of him; and (4) frequent supervisor feedback regarding Plaintiff's job performance (A.R. 455).

Dr. Fine also provided a "Mental Work Restriction Questionnaire" dated May 1, 2015 (A.R. 460-61). Therein, Dr. Fine opined that Plaintiff would have no impairment in his ability to: (1) understand, remember and carry out short and simple instructions; (2) maintain attention for two hour segments; (3) maintain regular attendance and be punctual; or (4) be aware of normal hazards and take appropriate precautions (A.R. 460). Plaintiff reportedly would have "slight" impairment in his ability to: (1) remember work-like procedures; (2) sustain an ordinary routine without special supervision; (3) work in coordination with or in close proximity to others without being distracted by them; (4) make simple work-related decisions; (5) complete a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number of and length of rest periods; and (6) respond appropriately to changes in a work setting (A.R. 460-61). Plaintiff reportedly would have "slight" to "moderate" limitation in his ability to: (1) accept instructions and respond appropriately to criticism from supervisors; and (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes, based on his difficulty sustaining and initiating social interactions (A.R. 461). Dr. Fine indicated a "guarded" prognosis, stating that the

challenge for Plaintiff "may be his difficulties interviewing & finding a position to get hired" (A.R. 461).

Treating optometrist Dr. Douglas W. Stephey completed a Department of Rehabilitation form dated October 13, 2015, which stated that Plaintiff has diagnoses of "Asperberger's" [sic], right eye esotropia/hypotropia with a history of eye muscle surgery, working memory deficits, oculomotor/eye tracking deficits, developmental dyslexia and magnocellular/motion processing deficits (A.R. 462-63; see also A.R. 464-69 (Dr. Stephey's "Vision Therapy Evaluation Report" for evaluations in December of 2013 and January of 2014, and an addendum in June of 2014); A.R. 516-22 (eye surgery records); A.R. 647-86 (Dr. Stephey's treatment notes)). On prior testing, Plaintiff reportedly had: (1) corrected visual acuities of 20/20 in both eyes, wore contact lenses, and had no "binocularity" (eye teaming); (2) failed Magnocellular Pathway Diagnostic Screening, which measures how fast the brain can use vision and how the brain knows "where" to point the eyes and move the body through space; (3) "severely handicapped" reading; and (4) "significant weaknesses" in visual processing speed, visual sequential memory, auditory sequential memory, visual memory, auditory memory and global memory (A.R. 465-68, 668-70, 681-82). Dr. Stephey opined that Plaintiff had "working memory deficits" which would present "challenges remembering visual and auditory instructions" and difficulties with any lengthy reading

///
///
///
///

(A.R. 463).[3]

Dr. Ruth Stacy evaluated Plaintiff to determine Plaintiff's eligibility for Inland Regional Center services, and Dr. Stacy prepared a psychological assessment dated June 21, 2016 (A.R. 525-33). According to the assessment, Plaintiff reported the following: He had graduated from high school with special education services and a 3.53 grade point average in regular education classes, and earned an Associate of Arts degree in radio broadcasting in June of 2013 from Mt. St. Antonio College through its disabled student programs, with accommodations of preferred seating, shared notes and extra time to complete examinations in a quiet environment (A.R. 526; see also A.R. 273-82, 309, 335-37, 406, 439, 448-49 (school-related records)). Plaintiff wanted to attend La Verne University, but needed to take a few classes before he could transfer (A.R. 526). While Plaintiff was in college, Plaintiff had interned with an indoor soccer league, helping to run a merchandise stand (A.R. 526). Plaintiff also took classes in Microsoft Office and received a certificate (A.R. 526). Plaintiff had volunteered at an animal shelter and a thrift store and had worked for his uncle's nursery, watering plants for one week (A.R. 526). Plaintiff was receiving services from the Department of Rehabilitation and had just started working at "OPARC," shipping and packing for UPS (A.R. 526).

_____

[3] The state agency physicians reviewed Dr. Fine's November, 2014 letter and Mental Disorder Questionnaire and Dr. Stephey's Vision Therapy Evaluation Report and Addendum, and the state agency physicians opined that Plaintiff was capable of sustaining "NP SRT" (non-public simple repetitive tasks) (A.R. 60-66, 93-93).

Dr. Stacy summarized available records dating back to May of 2000 (A.R. 527-29). Intelligence testing when Plaintiff was 10 years old reportedly showed a full scale score of 86 (A.R. 527). While Plaintiff reportedly presented with learning disabilities, including memory and attention deficits, he compensated for those weaknesses and was considered not eligible for special education services because his needs could be met in a regular classroom setting with modifications (A.R. 527). Plaintiff was reassessed when he was 13 years old and reportedly was found to have a full scale IQ score of 85, expressive language skills in the "average" range, and it was noted that Plaintiff got along well with others and was compliant in the classroom (A.R. 527-28). Plaintiff again reportedly had memory and attention deficits, but this time his evaluator reportedly concluded that Plaintiff's needs could not be met solely through modifications of a general education program (A.R. 528). Plaintiff was reassessed when he was 16 years old, which reportedly showed disabilities in fine motor skills, visual and auditory memory, and visual-motor integration which "pulled down" his testing scores (A.R. 528-29). Plaintiff reportedly appeared to compensate for his "weaknesses" by performing within his ability on testing and in the classroom (A.R. 529). Reportedly, Plaintiff then did not meet the criteria for special education programming (A.R. 529).

More recent psychological testing reportedly yielded scores suggesting Plaintiff has autism spectrum disorder (A.R. 529-30, 532). Adaptive behavior testing reportedly showed a survival skills quotient of 95, which was within the average range of functioning (A.R. 529, 531-32). Plaintiff was not given cognitive testing because his prior

findings suggested cognitive skills in the low average to average

range of intellectual functioning (A.R. 530). No communication

difficulties were reported (A.R. 530). Plaintiff reportedly engaged

in reciprocal social communication with Dr. Stacy, "but not to the

extent that one might expect" (A.R. 530-31).

Dr. Stacy opined that Plaintiff did not meet the criteria for

diagnosis of an intellectual disability, but he did meet the criteria

for autism spectrum disorder (A.R. 532). Dr. Stacy concluded that

Plaintiff's autism spectrum disorder was not a "substantial

disability" under California law to be eligible for Regional Center

services because Plaintiff did not have "substantial deficits" in

adaptive functioning (A.R. 532-33). Dr. Stacy diagnosed autism

spectrum disorder and recommended Department of Rehabilitation

vocational training to develop job-related skills (A.R. 533).[4]

---

[4]     Although Plaintiff reportedly sought a "second opinion"
from Dr. Duprez of Haven Psychological Associates sometime before
August 31, 2016, there is no evaluation from Dr. Duprez in the
record.  See A.R. 538 (letter referencing evaluation).  Plaintiff
apparently requested a hearing regarding the denial of Inland
Regional Center services, which was scheduled for September 12,
2016 (A.R. 534-37).  The record does not contain any further
records regarding Plaintiff's appeal, but there is an undated
letter from the Inland Regional Center indicating that Plaintiff
was eligible to receive, and was receiving, services based on the
autism spectrum disorder and ADHD diagnoses (A.R. 646).  A
Regional Center "Individual Program Plan" dated November 14,
2016, concerns Plaintiff's plan to get a job and states, inter
alia, that Plaintiff reportedly was eager to gain employment,
able to focus on preferred tasks for at least 30 minutes before
needing a break and able to use public transportation (A.R. 687-
700).  Plaintiff reportedly displayed "disruptive social
behaviors" almost every day when talking with others, but no
emotional outbursts, physical aggression or self-injurious
behaviors (A.R. 690).

Consultative examiner Dr. Anthony Benigno prepared a Complete Psychological Evaluation dated September 22, 2016 (A.R. 543-47). Plaintiff reportedly had been diagnosed with Asperger's disorder, ataxic dyskinetic cerebral palsy, non-hyperactive ADHD and high-functioning autism, with a history of outpatient psychotherapy for autism and social integration training (A.R. 544). Plaintiff reportedly spent his days watching television, listening to music, reading, washing dishes and using the computer (A.R. 544).

On examination, Plaintiff reportedly had a euthymic mood with restricted range of affect, intact immediate, recent and remote memories, an ability to sustain attention and concentration during his interview and testing, an adequate fund of knowledge and adequate judgment for commonsense hypothetical events, but "poor" insight into his illness (A.R. 545). Testing showed a full scale IQ score of 89, suggesting Plaintiff's general intellectual functioning is in the low average range (A.R. 546). Dr. Benigno opined that Plaintiff has Asperger's disorder (by history) with a Global Assessment of Functioning ("GAF") score of 80 (A.R. 546-47). See American Psychological Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000).[5]

///

---

[5] The GAF scale is used by clinicians to report an individual's overall level of functioning. A GAF score of 71-80 indicates: "If symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after a family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." See DSM-IV-TR, p. 34.

Dr. Benigno opined that Plaintiff would be able to:
(1) understand, remember and carry out short, simplistic instructions
with no difficulty; (2) understand, remember and carry out detailed
and complex instructions with mild difficulty; (3) make simplistic
work-related decisions without special supervision with mild
difficulty; (4) comply with job rules such as safety and attendance
with no difficulty; (5) respond to changes in the workplace with
moderate difficulty; and (6) maintain persistence and pace in a normal
workplace setting with mild difficulty (A.R. 547; see also A.R. 548-50
(Dr. Benigno's "Medical Source Statement of Ability to Do Work-Related
Activities (Mental)" form reporting mostly "none" to "mild"
limitations due to Plaintiff's "low average cognitive functioning,"
and "moderate" limitations in Plaintiff's ability to respond
appropriately to changes in a work setting)).  Dr. Benigno indicated
that Plaintiff presented with no history of interpersonal difficulties
and was socially appropriate on examination, and Dr. Benigno opined
that Plaintiff would have no difficulty interacting with supervisors,
coworkers and peers on a consistent basis (A.R. 547).

Psychologist Dr. David Glassmire reviewed the record, including
the opinions summarized above, and testified at the administrative
hearing (A.R. 35-43).  Dr. Glassmire opined that Plaintiff has autism
spectrum disorder without accompanying language or intellectual
disturbance (A.R. 35-36).  Dr. Glassmire recommended that Plaintiff be
limited to simple and routine tasks, no interaction with the public
and only occasional interaction with coworkers and supervisors (i.e.,
in an "isolated type work setting" with interaction with others 1/3 of
the day or less) (A.R. 39-40, 42).  Dr. Glassmire considered

Plaintiff's alleged need for a job coach (as argued by Plaintiff's counsel) and opined that Plaintiff would need a coach only for jobs that required more social interaction than required by the jobs Dr. Glassmire opined Plaintiff could perform (A.R. 40-41).

Thus, Drs. Benigno, Glassmire, and the state agency physicians all opined Plaintiff retains a residual functional capacity equal to or greater than the residual functional capacity the ALJ determined to exist. These medical opinions constitute substantial evidence to support the conclusion Plaintiff can work. See, e.g., Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007) (opinion of an examining physician can provide substantial evidence to support an administrative conclusion of non-disability); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (opinion of non-examining medical expert "may constitute substantial evidence when it is consistent with other independent evidence in the record") (citation omitted); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (opinions of non-examining physicians which do not contradict "all other evidence in the record" may furnish substantial evidence to support the administrative decision) (citation omitted).

To the extent any of the medical evidence is in conflict, it was the prerogative of the ALJ to resolve such conflicts. See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001); see also Treichler v. Commissioner, 775 F.3d 1090, 1098 (9th Cir. 2014) (court "leaves it to the ALJ" "to resolve conflicts and ambiguities in the record"). When evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision. See Andrews v.

1  <u>Shalala</u>, 53 F.3d at 1039-40; <u>accord</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947,

2  954 (9th Cir. 2002); <u>Sandqathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir.

3  1997).  The Court will uphold the ALJ's rational interpretation of the

4  evidence in the present case notwithstanding any conflicts in the

5  record.

6

7        **B.    <u>Other Evidence Supportive of the Administrative Decision</u>**

8

9        Other substantial evidence also supports the administrative

10  decision.  An "OPARC" report providing a "hands on" assessment of

11  Plaintiff's ability to function in an "integrated and realistic work

12  environment" dated August 3, 2016, suggests Plaintiff is capable of:

13  (1) packaging and assembly work counting screws and placing them

14  inside a bag, with "exceptional" performance at an above-level speed

15  and accuracy, and with Plaintiff keeping to himself throughout the

16  assessment; (2) assembly work counting fourteen strands and rubber

17  banding them together in a specific way "very diligently," although

18  Plaintiff reportedly was visibly agitated and did not engage his co-

19  workers; and (3) cafeteria work involving collaboration with staff and

20  a job coach, where Plaintiff used a cash register, took food orders,

21  cleaned, stocked shelves, and engaged with staff and customers (A.R.

22  553-54, 556, 560).  Plaintiff's evaluator stated that Plaintiff

23  "consistently demonstrates the ability to complete tasks without any

24  difficulty, [and] when necessary does not hesitate to ask for further

25  ///

26  ///

27  ///

28  ///

directives" (A.R. 560).[6]

The vocational expert testified that a person with the residual functional capacity the ALJ found to exist could perform the jobs the ALJ identified, which exist in significant numbers in the national economy (A.R. 50-51).  The ALJ properly could rely on this testimony in denying disability benefits.  See Barker v. Secretary, 882 F.2d 1474, 1478-80 (9th Cir. 1989); Martinez v. Heckler, 807 F.2d 771, 774-75 (9th Cir. 1986).

///

---

[6]  Plaintiff reportedly did not want to do any packaging or assembly work because the work supposedly was below his capacity and he did not feel challenged, and he also had no desire to work in the heat or in jobs requiring lifting (A.R. 560; see also A.R. 704 (Dr. Fine's summary after Plaintiff's July 10, 2016 visit, reporting that Plaintiff was discouraged by his Wal-mart job because he was working outside in the heat)). Plaintiff's evaluator, who was not a medical source (see A.R. 553 (noting she was a "Marketing Manager/Job Developer")), stated that Plaintiff would "benefit" from job coaching services for a job's initial 90-day probationary period to assist with "employment retention" (A.R. 560).

The ALJ did not materially err in rejecting the evaluator's suggestion Plaintiff would benefit from a job coach.  Even if the evaluator were an acceptable medical source (which this evaluator was not), the ALJ would not err by declining to adopt the evaluator's suggestion.  See Jacob v. Berryhill, 2018 WL 6650599, at *2 (9th Cir. Dec. 18, 2018) (an ALJ does not err by declining to include doctor recommendations, as opposed to imperatives, when formulating claimant's residual functional capacity; residual functional capacity represents "the most [a claimant] can still do despite [his or her] limitations," not a claimant's "ideal work conditions") (citations omitted); see also Ernesto S.S. by Ramirez v. Berryhill, 2019 WL 285796, at *4 (C.D. Cal. Jan. 22, 2019) (finding doctor's opinion that claimant would "benefit" from a job coach was not an opinion concerning the claimant's residual functional capacity; the doctor did not opine that a job coach was not necessary for the claimant to work).

16

## II. The ALJ Stated Legally Sufficient Reasons for Finding Plaintiff's Statements and Testimony Less Than Fully Credible.

Plaintiff challenges the sufficiency of the ALJ's reasons for finding Plaintiff's statements and testimony not entirely credible. See Plaintiff's Motion, pp. 4-11. An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Where, as here, an ALJ finds that a claimant's medically determinable impairments reasonably could be expected to cause some degree of the alleged symptoms of which the claimant subjectively complains, any discounting of the claimant's complaints must be supported by "specific, cogent" findings. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010); Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); but see Smolen v. Chater, 80 F.3d 1273, 1282-84 (9th Cir. 1996) (indicating that ALJ must state "specific, clear and convincing" reasons to reject a claimant's testimony where there is no evidence of malingering).[7] Generalized, conclusory findings do not suffice. See Moisa v. Barnhart, 367 F.3d 882, 885

_____

[7] In the absence of an ALJ's reliance on evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. See, e.g., Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015); Burrell v. Colvin, 775 F.3d 1133, 1136-37 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d at 1102; Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014); Garrison v. Colvin, 759 F.3d 995, 1014-15 & n.18 (9th Cir. 2014); see also Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting earlier cases). In the present case, the ALJ's findings are sufficient under either standard, so the distinction between the two standards (if any) is academic.

(9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (internal citations and quotations omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen v. Chater, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Social Security Ruling 16-3p (eff. March 28, 2016).[8]  As discussed below, the ALJ properly discounted Plaintiff's subjective complaints.

A.  **Plaintiff's Testimony and Statements**

Plaintiff testified that he lived with his parents and said that, when he is not at work, he relaxes, watches television and helps with cooking (A.R. 44-45).  Before his job at Wal-mart, Plaintiff had held temporary, part-time jobs which had not required a job coach (A.R. 44, 48).  Plaintiff said he constantly asks "higher ups" what to do (A.R. 44).  Reportedly, Plaintiff's job coach at Wal-mart was teaching him how to perform tasks, making sure that Plaintiff met "company

---

[8]  Social Security Rulings ("SSRs") are binding on the Administration.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).  SSR 16-3p superseded SSR 96-7p, but may have "implemented a change in diction rather than substance."  R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016); see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (suggesting that SSR 16-3p "makes clear what our precedent already required").

standards," and helping Plaintiff phrase his communications with his
case managers (who had not been told the nature of Plaintiff's
impairments) (A.R. 45-47).  Plaintiff had been working with his job
coach for two months and said that he did not need the coach for
"hands on" teaching as much, but thought he still needed the coach
"[a] little bit" for things like helping Plaintiff communicate with
others (A.R. 46-68).  Plaintiff admitted, however, that the job at
Wal-mart involved "hardly any interaction" (A.R. 46-48).  Plaintiff
said he actually would like more interaction with co-workers (A.R. 47,
49-50).  Plaintiff admitted that he can "work with other people" (A.R.
49).

     In a "Function Report - Adult - Third Party" form dated
December 16, 2014, Plaintiff's father stated that Plaintiff has issues
with talking, seeing, memory, completing tasks, concentration,
understanding, following instructions with multiple steps, using his
hands and getting along with others, but Plaintiff could pay attention
for 90 minutes without a break (A.R. 316-24).  Plaintiff's daily
activities consisted of self care (with assistance shaving),
occasionally feeding a cat, preparing a school backpack, attending
classes (with transportation), studying with tutors, watching
television and playing video games (A.R. 316-18, 320).  Plaintiff
reportedly is "dangerous" with sharp objects and objects that could
injure, due to Plaintiff's fine motor issues which Plaintiff has had
since birth (e.g., he is unable to fasten intricate/small fasteners),
and cannot safely use a stove or oven (A.R. 316, 318, 322).  Plaintiff
reportedly could do laundry, vacuum, and dust (with reminders), taking
approximately twice the time it normally takes to perform these tasks

(A.R. 318).  Plaintiff could go outside and shop in stores with parental assistance, but does not drive and cannot navigate public transportation requiring a bus transfer (A.R. 319).  Plaintiff could go to school, play basketball on occasion, attend sporting events with friends, go to the mall, and visit family and friends with someone accompanying him for all activities except attending school (A.R. 320).  Plaintiff reportedly handles stress and changes in routine poorly, with frustration and anger when he cannot perform to expectations (A.R. 322).

In a "Function Report - Adult" form dated December 7, 2014, Plaintiff claimed similar limitations and abilities (A.R. 325-33). Plaintiff stated that he has trouble talking in a way that is not confusing to others, has trouble writing legibly, easily forgets things and is slower than most people (A.R. 325, 330).  Plaintiff reported that he could handle stress "ok" and must get "used to" changes in routine (A.R. 331).

**B.    <u>The ALJ's Reasoning is Legally Sufficient.</u>**

The ALJ found that Plaintiff's testimony and statements were "not entirely consistent with the medical evidence and other evidence in the record" (A.R. 21).  The ALJ acknowledged Plaintiff's alleged inability to work due to mental and visual processing problems, difficulty with fine motor coordination, inability to read body language and difficulty with memory (A.R. 19-20).  The ALJ determined that these allegations do not persuasively establish a more restrictive residual functional capacity than the ALJ found to exist

because: (1) contrary to Plaintiff's allegations that he has difficulty with memory, Dr. Benigno's mental status examination showed Plaintiff's immediate, recent and remote memories were intact; (2) Dr. Fine's treating notes indicate Plaintiff was searching for jobs, going to interviews, and getting along with his family, and Plaintiff had obtained employment at Wal-mart where he was getting along with his job coach and doing basic janitorial work; (3) assessment of Plaintiff's vocational functioning showed he was capable of the "exceptional" performance of hands-on assembly tasks, and was able to ask questions of others; (4) full scale IQ testing showed low average ability, average functioning in adaptive skills, and some limitation in reciprocal social interaction, which the medical expert found consistent with the ALJ's residual functional capacity determination; (5) Plaintiff's Individual Program Plan stated he was able to focus on a preferred task for at least 30 minutes; (6) although the record showed a diagnosis of autism and some special education, Plaintiff had a high grade point average of 3.53 in 12th grade, and had obtained an Associate's Degree in radio broadcasting; and (7) in spite of alleged mental and visual processing problems, fine motor coordination difficulties and problems with interpretation of body language and picking up social cues, Plaintiff is able to follow basic microwave instructions, do laundry, vacuum, go to sports events with friends, play video games and play basketball (A.R. 19-22).

Reasons 2, 3, 5, 6 and 7 were acceptable bases upon which to discount Plaintiff's subjective statements. Inconsistencies between claimed incapacity and actual activities properly can impugn a claimant's credibility. See, e.g., Molina v. Astrue, 674 F.3d 1104,

1112 (9th Cir. 2012) ("the ALJ may consider inconsistencies in the
claimant's testimony or between the testimony and the claimant's
conduct"); Turner v. Commissioner, 613 F.3d 1217, 1225 (9th Cir. 2010)
(even activities performed with some difficulty can undermine a
claimant's allegations of totally disabling impairment); Lingenfelter
v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (activities
inconsistent with alleged symptoms relevant to credibility
determination); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
2002) (inconsistency between claimant's testimony and claimant's
actions supported rejection of claimant's credibility); Verduzco v.
Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistency between
claimant's testimony and claimant's actions cited as a clear and
convincing reason for rejecting claimant's testimony).

Reasons 1 and 4 were also acceptable bases upon which to discount
Plaintiff's subjective statements.  Asserted inconsistencies between a
claimant's subjective complaints and the objective medical evidence
can be a factor in discounting a claimant's subjective complaints, but
cannot "form the sole basis."  See Burch v. Barnhart, 400 F.3d 676,
681 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.
2001) (same); see also Carmickle v. Commissioner, 533 F.3d 1155, 1161
(9th Cir. 2008) ("Contradiction with the medical record is a
sufficient basis for rejecting the claimant's subjective testimony").
Where there is an alleged inconsistency between the medical evidence
and a claimant's subjective complaints, the ALJ must make a specific
finding identifying the testimony the ALJ found not credible and
linking the rejected testimony to parts of the medical record
supporting the ALJ's non-credibility determination.  See Brown-Hunter

v. Colvin, 806 F.3d at 494 (holding it was legal error for ALJ to fail to make such a link) (citations omitted).  Here, the ALJ's findings satisfied these requirements.

For the same reasons, to the extent Plaintiff claimed before the Administration (as he does here) that he requires a job coach, the ALJ properly rejected such a claim, given Plaintiff's intact memory and demonstrated ability to sustain concentration and to work without distraction during the vocational assessment and psychological testing (A.R. 23 (citing Plaintiff's OPARC hands on assessment at A.R. 553-61 and Dr. Benigno's testing at A.R. 545)).

Assuming, arguendo, the invalidity of one or more of the ALJ's stated reasons for discounting Plaintiff's subjective statements and testimony, the Court properly may uphold the discounting where sufficient valid reasons have been stated.  See Carmickle v. Commissioner, 533 F.3d at 1162-63.  The ALJ stated sufficient valid reasons to allow this Court to conclude that the ALJ discounted Plaintiff's subjective statements and testimony on permissible grounds.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). The Court therefore defers to the ALJ's determination.  See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007) (court will defer to Administration's credibility determination when the proper process is
///
///
///
///
///

used and proper reasons for the decision are provided); <u>accord</u> <u>Flaten</u>
<u>v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1464 (9th Cir.
1995).[9]

**CONCLUSION**

For all of the foregoing reasons,[10] Plaintiff's motion for
summary judgment is denied and Defendant's motion for summary judgment
is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: February 22, 2019.

/s/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[9]     The Court does not determine herein whether Plaintiff's
subjective complaints are credible.  Some evidence suggests that
those complaints may be credible.  However, it is for the
Administration, and not this Court, to evaluate the credibility
of witnesses.  <u>See</u> <u>Magallanes v. Bowen</u>, 881 F.2d 747, 750, 755-56
(9th Cir. 1989).

[10]     The Court has considered and rejected all of
Plaintiff's arguments.  Neither Plaintiff's arguments nor the
circumstances of this case show any "substantial likelihood of
prejudice" resulting from any error allegedly committed by the
Administration.  <u>See generally</u> <u>McLeod v. Astrue</u>, 640 F.3d 881,
887-88 (9th Cir. 2011) (discussing the standards applicable to
evaluating prejudice).